**FILED**
**Dec 22, 2021**
**08:19 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| **KIMBERLY BEARD,** ) | **Docket No. 2021-06-0644** |
| **Employee,** ) | |
| **v.** ) | |
| **NOSHVILLE DELICATESSEN,** ) | **State File No. 43509-2021** |
| **LLC,** ) | |
| **Employer,** ) | |
| **and** ) | **Judge Joshua Davis Baker** |
| **EMPLOYERS PREFERRED** ) | |
| **INSURANCE COMPANY,** ) | |
| **Carrier.** ) | |

_____

## EXPEDITED HEARING ORDER
_____

At a December 2, 2021 expedited hearing, Ms. Beard requested medical treatment with spine specialist Dr. Christopher Kauffman and temporary disability benefits for a fall on a wet floor at work.[1] Because of inconsistencies in her testimony and insufficient expert medical evidence to show she suffered a work-related aggravation of a preexisting condition, the Court denies her requests.

### Claim History

Noshville Delicatessen hired Ms. Beard as a dishwasher. During her second day, on February 7, 2021, she slipped on a wet floor and fell on her tailbone.

Testimony differed concerning when Ms. Beard requested medical treatment. Melissa Hall, who processes work-injury claims for Noshville, testified that the company offered Ms. Beard medical treatment immediately, but she refused and continued working normally for weeks.

---

[1] The Court grants Ms. Beard permission to adjudicate medical benefits, even though the mediator did not certify it as a disputed issue. The Court finds: 1) Ms. Beard could not have known medical benefits would be disputed because Noshville was authorizing medical treatment, and 2) prohibiting presentation of this issue would result in substantial injustice to Ms. Beard. Tenn. Code Ann. § 50-6-239(b)(2)(A)-(B) (2021).

Ms. Beard agreed she initially refused treatment because she did not think her injury was serious and did not want to involve her employer. However, she also said she asked for treatment *later that shift* and for weeks afterward but was ignored.

Approximately three weeks after the injury, Ms. Beard sought treatment from her own physician, Dr. Julie Stinson-Reynolds. Over those three weeks before seeing her doctor, Ms. Beard continued to work but said lifting heavy plates and trays of mugs worsened her back pain.

When she went to visit Dr. Stinson-Reynolds, Ms. Beard claimed she told a nurse she needed care because she fell at work. The nurse, however, reported that Ms. Beard told her she "tripped & fell at work a couple of weeks ago then fell in the snow last week twice onto tailbone area. Low back and legs are hurting[,] and tailbone area is bruised." Ms. Beard testified the nurse misreported her account, as she only fell once in the snow.

After an x-ray that showed "lumbar degenerative changes similar to prior exams," Ms. Beard went to orthopedist Dr. Jason Jones. In her first visit, she explained that she had been "working since [the] injury," but that the "pain [had] progressively worsened." She also reported her history of lumbar back pain, which already required prescription medication for pain management, but she claimed this pain was "worse and different."

A few weeks after the fall, Noshville accepted the claim when Ms. Beard gave Ms. Hall documentation from her doctor and asked for treatment. Noshville authorized care with Dr. Jones, who imposed restrictions limiting the amount of weight Ms. Beard could carry and the amount of time she could stand and sit during the workday. Ms. Beard passed these restrictions along to Noshville.

According to Ms. Beard, she reduced her hours to two days per week due to pain but asserted that Noshville did not accommodate her restrictions. Ms. Hall disagreed, stating that Noshville accommodated her restrictions: "We did cut her back to one or two days, to Monday or Tuesday, because those seemed to be comfortable days for her, because as she had said, she couldn't work a full week's schedule[.]"

On this point, Ms. Beard agreed, saying that "[E]very bit of medicine [her doctor] would give me would not work, and that's why I could only go down to two days a week." She acknowledged she began working part-time for another employer because she is "still hurting." Further, in a handwritten statement that was admitted into evidence, she wrote, "I didn't want to work a lot of hours cause when I was working 5 days a week I caused myself more pain[.]"

Concerning her pain, Ms. Beard's medical records and imaging showed a preexisting low-back injury, including treatment for lumbago with sciatica as recently as

five months before her work fall. A September 10, 2020 record from Dr. Reynolds assessed, "Lumbago with sciatica" and "Chronic pain syndrome." When asked about these records on cross-examination, Ms. Beard admitted having some symptoms but denied others. She also admitted she lied to her doctors in the past to get narcotics. Further, Ms. Beard admitted lying during her deposition by omitting old theft convictions and a fraud conviction. She attributed the omission to a faulty memory.

Despite her prior false statements, a comparison of Ms. Beard's pre- and-post-injury MRIs showed "a foraminal disc protrusion resulting in moderate bilateral foraminal stenosis, which appeared more pronounced than on the [previous] study."

With these MRI results, Dr. Jones recommended "a neurosurgical versus orthopedic spine consult" and only partially answered a causation questionnaire, leaving the "yes" and "no" boxes unchecked. But he wrote, "[T]he patient is likely suffering from new musculoskeletal back pain only as a result of her fall. I would recommend evaluation by a spine specialist for further treatment options." He also acknowledged that "preexisting low back findings . . . are similar to the current ones" but then added, "Patient states her symptoms are new and different."

After Dr. Jones recommended a spine specialist, the carrier offered a panel, and Ms. Beard selected Dr. Christopher Kauffman. However, she never received an appointment, as Noshville declined to authorize further medical treatment.

## Findings of Fact and Conclusions of Law

At this stage, Ms. Beard need only present sufficient evidence that she is likely to prevail at a final hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

This claim turns on medical causation and witness credibility. The Workers' Compensation Law requires an employer to furnish medical treatment made reasonably necessary by a work injury. Tenn. Code Ann. § 50-6-204(a)(1)(A). A work injury is defined as one "arising primarily out of and in the course and scope of employment" that causes the need for medical treatment.

A work injury includes the aggravation of a preexisting condition if shown "to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). A "reasonable degree of medical certainty" requires a physician's opinion that the employment contributed more than fifty percent in causing the injury, considering all causes. *See* Tenn. Code Ann. § 50-6-102(14)(B)-(D). While lay testimony may be probative of causation, it is insufficient to meet an employee's burden of proof in the

3

absence of medical evidence. *Arciga v. AtWork Pers. Servs.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7 (Feb. 2, 2016).

Here, the Court does not find Ms. Beard's testimony concerning causation probative or credible. The defense impeached her credibility, and inconsistencies in her testimony created doubt, sometimes even confusion, about what caused her need for treatment. Ms. Beard claimed she requested treatment the day she fell but also said she did not want to involve her employer and did not believe she was hurt enough to need treatment. She claimed lifting heavy plates and trays of mugs worsened her injury, but she did not complain to her provider about this; rather, she said she fell in snow a week before seeking treatment. Further, the Court is not reassured by her explanation that the reason her past and present medical records document similar symptoms is because she lied to medical professionals for narcotics.

Many potential causes exist for Ms. Beard's injury. Expert medical opinion is needed to determine whether an aggravation of her preexisting injury arose primarily out of and in the course and scope of her employment. In other words, Ms. Beard's proof is missing the necessary causal link between her fall at work and her alleged disability and need for medical treatment.

Notably, Dr. Jones's opinion sheds no light on whether Ms. Beard's work injury primarily aggravated her preexisting condition. He acknowledged her pain. But an increase in pain is not a compensable aggravation. *Fly v. Travelers Ins.*, No. W2011-01215-SC-WCM-WC, 2012 Tenn. LEXIS 642, at *10 (Tenn. Workers' Comp. Panel Sept. 20, 2012). He further acknowledged that the findings before the injury and after "are similar," but did not explain how her fall at work could have made the disc protrusion "more pronounced" than in previous studies. Moreover, he did not say that her symptoms are new and different. Rather, he attributed that statement solely to Ms. Beard, who admitted in her testimony at trial that she has misreported her symptoms previously for gain.

Concerning Ms. Beard's request for temporary disability benefits, an employee is entitled to temporary partial disability benefits when partially disabled from working due to a compensable injury. Tenn. Code Ann. § 50-6-207(1)-(2). Where an employer "cannot return the employee to work within the restrictions . . . the injured worker may be eligible for temporary partial disability." *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *8 (Dec. 11, 2015).

Ms. Beard has not shown she would likely prevail in proving she suffered a compensable injury. Additionally, the testimony revealed that her restrictions did not prevent her from working a full week. The Court finds Ms. Hall credible that Noshville offered work within Ms. Beard's restrictions, but that Ms. Beard chose to work part-time

4

because of her pain.  Further, Ms. Beard did not introduce evidence of any restrictions that limited work to two days per week.

Ms. Beard bears the burden of proof at this hearing, but due to the serious concerns about her credibility and the uncertain expert medical evidence, the Court finds she failed to satisfy her burden.  Therefore, the Court holds that Ms. Beard has not shown that she is likely to prevail at a final hearing that she is entitled to medical treatment with Dr. Kauffman or to temporary disability benefits.

**IT IS ORDERED** as follows:

1. The Court denies Ms. Beard's requested relief at this time.

2. The Court sets a scheduling hearing on **March 7, 2022, at 9:30 a.m. Central Time.** The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED December 22, 2021.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

<u>Exhibits</u>

1. Rule 72 Declaration of Kimberly Beard
2. Medical Records (Document ID 64897)
3. Signed statement of Kimberly Beard
4. Choice of Physician form selecting Dr. Christopher Kauffman
5. Signed questionnaire from Dr. Jason Jones dated August 20, 2021
6. Kimberly Beard's Two-week Notice dated August 10, 2021

<u>Technical Record</u>

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Motion to Continue
5. Employee's Response to Motion to Continue
6. Order Canceling Expedited Hearing
7. Employee's Motion to Compel Exam
8. Order Setting Motion Hearing
9. Employer's Response to Employee's Motion to Compel Medical Appointment
10. Order Setting Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 22, 2021.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Kimberly Beard, Employee | | | X | kimbeard743@gmail.com |
| Lauren Ray, Richard Clark; Employer's Attorneys | | | X | lray@eraclides.com rclark@eraclides.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*